THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED DIDA, Y51285, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01407-GCS |
| | ) |
| JANE DOE 1, | ) |
| KIMBERLY HVARRE, | ) |
| JOHN DOE 1, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Mohamed Dida, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Big Muddy River Correctional Center ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 9). This case was opened by the severance of claims related to dental care from *Dida v. Hvarre*, Case No. 3:24-cv-00131-GCS, into the present pleading. Plaintiff was provided an opportunity to inform the Court if he wished to proceed with this action, or if he preferred to dismiss this action. Plaintiff did not explicitly state his wishes, but he filed an Amended Complaint (Doc. 9), which the Court interprets as an indication that he wishes to proceed with this lawsuit.

Plaintiff's Amended Complaint (Doc. 9) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that he was arrested in November of 2021 while undergoing a dental procedure. (Doc. 9, p. 6). The procedure included repairing crowns and performing root canals for several teeth. At the Mclean County Jail, he had two teeth extracted despite his protest and preference for root canals. Upon arrival at Big Muddy, Plaintiff met with dental personnel and explained that he needed crowns repaired and root canals performed. He explained that his exposed teeth were decaying. When asked about the reason for the existing crowns, Plaintiff explained he had obtained crowns to correct for brown teeth.

Plaintiff alleges that John Doe consulted with 2 Jane Does and informed him that because he had crowns for cosmetic purposes, they could not be fixed. (Doc. 9, p. 7).

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Amended Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 8) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memoranda of Understanding between IDOC, Wexford, and this Court.

Plaintiff contended that the crowns may have originated as cosmetic, but they had now transformed into a health need because the exposed teeth were infected. John Doe called Jane Doe 1 (the healthcare administrator) into the room, and she reiterated that the only thing they could offer would be extractions. Plaintiff attempted to inform her that he believed there were health care centers that would fix his problem, and if not, he had his own private insurance that could be used to cover the dental work. Jane Doe refused these options and placed Plaintiff on a waiting list to see a visiting dentist. (Doc. 9, p. 7).

John Doe 1 (the visiting dentist) told Plaintiff that the State of Illinois does not allow anything other than extractions for his dental needs. (Doc. 9, p. 7). Plaintiff claims this is unacceptable. He alleges that his exposed teeth are decaying, the broken crowns cut and injure his teeth, and he has big holes developing where he needs root canals. He complains that food particles often get trapped in the large abscesses. Plaintiff ultimately saw the visiting dentist on March 20, 2023, and a second time, six months later. On the first occasion, John Doe 1 told him that Illinois law prevented him from offering anything other than an extraction. On the second visit, Plaintiff complained that his exposed teeth were decaying, changing color, and bleeding. John Doe 1 again indicated that all he could offer was extractions. (Doc. 9, p. 8). Plaintiff alleges that without help his teeth would continue to decay and bleed. They are also sensitive to hot and cold beverages.

Plaintiff additionally alleges that while at Big Muddy he has seen an ENT surgeon, a hematologist, and a gastroenterologist. (Doc. 9, p. 9). He claims that they advised him about dietary behaviors and sent a sealed recommendation to Jane Doe 1. He alleges that "none have been filled." Plaintiff attempted to inform the dietary department that he was

to eat dinner at least 3 hours before bed, and/or he was supposed to have a high-fiber diet for a gallbladder polyp, but they ignored what he said. (Doc. 9, p. 9). He asked the medical administrator in October 2023 for copies of his medical records, but she informed him he had to pay and then deducted money from his funds.

Plaintiff further alleges that the medication "indicated" in April was denied. However, he also states he was given "one" on April 24, 2024, but then has been denied six refills to date. Plaintiff claims he complained about the prescription refill issue and his health and medical condition, but he was completely denied access to the medical facility. He also states that he has filed nurse sick call slips and has gotten no response. Plaintiff believed grievances would improve the situation, but he now thinks they may cause him to be targeted. (Doc. 9, p. 10).

In support of the complaint, Plaintiff submitted an assortment of records. Many of the records pertain to grievances and requests for care lodged at the Mclean County Jail. His demand for relief is "better dental care." (Doc. 9, p. 11).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Count 1:** **Eighth Amendment deliberate indifference claim against John Doe 1 (the dentist) for refusing to offer any treatment other than tooth extraction;**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against Jane Doe 1 (healthcare administrator) for her role in denying Plaintiff's requests for dental care.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly* pleading standard. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## PRELIMINARY DISMISSALS

In the order severing this matter from Plaintiff's original complaint (Doc. 1), the Court indicated that Plaintiff may have presented a claim about Jane Doe 1's role in helping secure treatment for Plaintiff's B-12 deficiency or anemia. (Doc. 1, p. 7). However, in the Amended Complaint (Doc. 9), Plaintiff provides very little information about this issue, and the information he has provided is too ambiguous to adequately understand the scope of this claim. Plaintiff suggests that while at Big Muddy he attended a variety of specialist appointments that have produced recommendations for prescriptions and particular dietary practices, but the recommendations have not been implemented. However, from this vague recitation of events, it is not clear specifically what he alleges that Jane Doe 1 has done to cause him harm. At most, Plaintiff seems to allege she allowed him to receive a prescription once and then prevented him from accessing three refills. He does not explain what the prescription was issued to treat, and he does not describe a specific harm associated with the missed refills. Additionally, the only relief he seeks is "adequate dental care," but it does not seem like the prescription issue was related to dental care. Given these ambiguities, no claim will proceed against Jane Doe 1 or any other defendant for any allegations beyond the scope of dental care. If

Plaintiff has other medical conditions and problems, he will likely need to pursue those claims in a separate case, as they appear unrelated to the limited scope of this case.

Additionally, the Court notes that in his allegations about dental care, Plaintiff mentions John and Jane Does that have not been named in the caption of the case. It is not obvious if he meant to include them as defendants, or if he merely discussed interactions with these individuals to give context to his claims. Discussing a party without formally naming them is not sufficient to state a claim, so any such allegations will not be considered any further.

## DISCUSSION

**Claim 1**

Plaintiff alleges John Doe 1 (the visiting dentist) failed to adequately treat his serious dental needs, including decaying teeth, bleeding and infected gums, and large holes or abscesses in his teeth. He complains that the only option John Doe 1 offered was total extraction of the impacted teeth, when, in fact, he believes his crowns should be repaired, and he should receive root canals.

An Eighth Amendment claim arising from the denial of dental care consists of an objective and a subjective component. *See Berry v. Peterman*, 604 F.3d 435, 439–440 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (*i.e.*, an objective standard), and he must also show that each defendant responded with deliberate indifference (*i.e.*, a subjective standard). *Id.* Here, Plaintiff appears to have identified a serious dental condition in so much as he alleges constant pain and sensitivity in his teeth, as well as infections and bleeding. Although inmates cannot demand specific

care, he claims that the offer of complete extraction is inappropriate and that without *any* alternatives he has been left to suffer needlessly in pain. At this early juncture, the Court cannot determine if offering extractions is a reasonable and appropriate possible course of treatment. *See, e.g.*, *Berry v. Lutsey*, No. 18-2614, 780 Fed. Appx. 365, 369-370 (7th Cir. July 3, 2019) (noting that although the inmate did not receive every accommodation he wanted, he had no evidence that the care he received was a substantial departure for accepted professional judgment, practice, or standards). The Court must construe the complaint broadly in Plaintiff's favor, and making inferences in his favor, Plaintiff has sufficiently alleged a basis for deliberate indifference against John Doe 1.

**Claim 2**

Plaintiff further alleges that his problems in securing needed dental care have been caused by Jane Doe 1's refusal to consider alternatives or to consider accepting his private dental insurance to cover his needs. Administrators, even medical administrators, may defer to treating providers concerning patient care, but they cannot turn a blind eye to a problem or fail to intervene if they know something about the care being provided is amiss. The allegations against Jane Doe 1 are more tenuous than those against John Doe 1 who personally assessed Plaintiff's dental condition and made a recommendation, but reading the complaint broadly in Plaintiff's favor, he may still proceed against Jane Doe 1 on the theory that she may have blindly deferred to John Doe 1 or she may have allowed the situation to proceed despite knowing he had a serious medical need that was not being treated.

DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 9) survives against Defendant John Doe 1 and **Claim 2** survives against Defendant Jane Doe 1. Plaintiff seeks only injunctive relief, so Defendant Kimberly Hvarre (the Warden of Big Muddy) shall remain as a party in this case in her *official capacity* only for purposes of implementing any potential injunctive relief, and to assist with identifying the John/Jane Doe defendants. A separate order will be issued to guide the process of identifying the John/Jane Does.

The Clerk of Court is **DIRECTED** to prepare for Defendant Kimberly Hvarre (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 9), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order. **Defendant Hvarre need not file an answer**, Hvarre is included only for purposes of identifying the Doe defendants and implementing any future injunctive relief.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes. The Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard Order under the Health Insurance Portability and Accountability Act ("HIPAA") because it will involve the exchange of medical records.

The Clerk of Court is **DIRECTED** to review Plaintiff's IFP Motion (Doc. 3) and to assess an initial partial filing fee, if appropriate.

**IT IS SO ORDERED.**

**DATED:  June 25, 2024.**

*Gilbert C Sison* (Digitally signed by Gilbert C Sison, Date: 2024.06.25 12:36:37 -05'00')

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.